**Delaware County v. Wheeler**

*Francis John Catania,* for plaintiff.
*Lacy Wheeler ,* pro se.

KENNEY, *J.,* March 30, 2011—This is a Right-to-Know-Law ("RTKL") matter that was presented to this court for review after the Pennsylvania Office of Open Records ("OOR") granted the appeal of Lacy Wheeler, III ("requestor"), finding that Delaware County ("county") did not meet its burden of proof in denying the requestor's request for records. County appealed the final determination of the OOR to this court and, upon review, this court reversed the OOR, holding that in fact, county met its burden of proof and properly denied the request because it fit within one of the enumerated exceptions to the RTKL. The requestor has appealed this court's decision. This opinion is necessitated by that appeal.

On June 4, 2010, Delaware County's open records officer, Anne M. Coogan, received following request

written on the standard form:

> Please provide copies of any and all records showing the hours and days worked by Officer George Miller from the Park Police between January, 2010 and the present. These records should include, but not be limited by, time cards, pay period reports, and any documents that will show what hours Officer Miller worked on what days and the total weekly hours for each pay period.

See, "Petition Requesting Judicial Review of a Final Determination of the Pennsylvania Office of Open Records" at "Exhibit 2."

The Open Records Officer receives this request knowing that under the law these records, as requested, are presumed to be public record if in the possession of the agency. See 65 P.S. §67.305. However, there are exceptions to this presumption. As an example, the RTKL indicates that this presumption shall not apply if the record is exempt under Section 708. See 65 P.S. §67.708.

In this case, it was incumbent upon Ms. Coogan, in fulfilling her responsibilities, to evaluate the records requested and apply, at a minimum, a common sense analysis to whether they are public or exempt from public disclosure. In this case, the analysis would reveal the following: the records requested are of a specific individual; they are personnel records; they are records of a police officer and a first responder; and the records would, at a minimum, reveal a pattern of where the officer is on duty, thus subjecting him and others to personal, physical risk. Evaluating the above, common sense dictates that the records sought could be used to put the officer and

others at risk. Open records officers of local agencies must apply common sense to requests made pursuant to the RTKL, and so too must the OOR in evaluating the request. However, open records officers and the OOR should not be subjecting individual police officers to safety risks, by failing to apply common sense to a records request of the work schedules of an individual police officer.[1]

When this matter was evaluated by the OOR, County proffered Section 708 as providing an exemption for the records requested because, reasonably, they were likely to result in a substantial and demonstrable risk to the personal security of an individual. See 65 P.S. §67.708(b)(16)(b)(1)(ii). The undisputed facts of record establish that the records sought were not of any individual, but of a police officer seeking his personal duty hours over a period of many months. Clearly the disclosure of these records would enable someone, in possession of them, to determine the duty times, days, weekends and hours worked, including

---

1. It should be noted that the RTKL does not place a burden on the open records officer of the local agency to notify the individual who is the target of the RTKL request. Such an individual is not given the opportunity to intervene and to be heard on the issues regarding potential privileges or privacy rights that the open records officer may not be aware of. The individual may simply want to point out clear and obvious exemptions, or case law, that the open records officer may miss in its supplemental materials sent to the OOR, thereby limiting what the open records officer can argue on appeal. This is a significant flaw of the RTKL, as currently enacted, as it does not provide for a full presentation of the issues for review by the trial court, and moreover, significantly increases the possibility that records involving specific individuals may be improperly released. The situation becomes even more serious given the time pressures placed on the open records officer by the RTKL, and indeed by the OOR to make everything public as soon as possible. A further concern is that across the commonwealth there are a multitude of open records officers, all of whom may not have the same urgency to review a request like this for appropriate exemptions and may release an individual's records, when said individual's records should have been kept private, and then allowing the open records officer to hide behind the so-called presumption in making the "mistake."

graveyard shifts when officers are often at most risk. Someone having this information would be in a position to lie in wait for the officer when he or she would be alone, isolated and highly vulnerable in an unsuspecting point in their shift, thus putting the officer in a substantial and demonstrable risk to their personal security. That is all the statute requires. See 65 P.S. §67.708(b)(16)(b)(1)(ii).

The nature of the request itself meets the burden of proof, given the fact that it is asking for the hours and days of a police officer over a great period of time. This burden, a preponderance of the evidence, is the least burden of proof required under the law. It requires a mere slight tipping of the scale by the one carrying the burden. Who would want their first responder loved ones able to be tracked as to when they were working and how often? That, in and of itself, puts the officer at a substantial and demonstrable risk.

Police officers have enough safety concerns without now the specter of any member of the public essentially having access to information that would enable someone to divine their shift schedule. In addition, an individual may already have other information, such as patrol areas of the park police, which combined with work schedules, may pinpoint the location of this individual officer at 3:00 a.m. on a Sunday morning in an isolated area of a county park. What does a local open records officer say to a bereaving widow, once confronted over how the local agency could have released information that was helped in the stalking of her loved one and gave him a significant missing piece to the puzzle?

In this case, there was no need for the OOR to demand

further information. To paraphrase res ipsa loquiter, the request speaks for itself. Open records officers, diligently performing their reviews, should not need to ferret out the details of every one of these requests regarding our law enforcement officers to determine if the motive behind the request is benign. Indeed, under the RTKL, the open records officer is prohibited from asking about, or investigating the nature of, the request because the intended use of a public record cannot be used by the open records officer to deny a request. See 65 P.S. §67.302. It would be improper, therefore, to ask for the intended use because that would indicate the open records officer was making a decision whether the record was public based on its intended use which Section 301 clearly prohibits.

It is interesting to note that the OOR's final determination does not directly respond to the personal safety aspect of this request, as it applies to an individual police officer. This of course, despite the fact, that in response to the OOR's request for additional information the county specifically referred the OOR to well founded and common sense concerns for this individual officer's safety, and by implication any officer's safety upon receiving other such requests in the future. The county said as much in a letter to the OOR, but that letter was rejected as not being under affidavit although it was sent on official Delaware County letterhead. The RTKL requires the open records officer to review the request in good faith, and the OOR, as well as this court, is required to presume that the local open records officer is acting in good faith and abiding by the law. See 65 P.S. §901.

The OOR concludes by fiat that the burden was not met while proclaiming the OOR's seriousness about personal

safety concerns. Juries are told not to leave common sense at the courthouse door and to use their common sense when evaluating a case. Open records officers and the OOR must do the same. They must remember that because they are prohibited by law from taking the motive of the request into account, their decisions create the same precedent not only for the requester with a benign intent, but also the requester with an evil intent.

## CONCLUSION

The nature of the request itself was enough for the county to meet its burden of proof to establish that the presumption did not apply because the records sought were the duty hours of an individual officer over a long period of time. The release of these records, without question, puts the officer at a clear and demonstrable risk to his personal safety. The county made a common sense practical and proper application of this request to the law as given to it by the Legislature. Therefore, the order of January 25, 2011 should be affirmed.